1  ELIZABETH A. STRANGE
   First Assistant United States Attorney
2  District of Arizona

3  MARK J. WENKER
   Assistant U.S. Attorney
4  Arizona State Bar No. 018187
   Two Renaissance Square
5  40 North Central Avenue, Suite 1800
   Phoenix, Arizona  85004-4408
6  Telephone: (602) 514-7500
   mark.wenker@usdoj.gov
7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9                 DISTRICT OF ARIZONA

10

11 United States of America,

12            Plaintiff,            **VERIFIED COMPLAINT FOR
       v.                            FORFEITURE *IN REM***
13
   13 Firearms and Receivers,
14
            Defendants *In Rem*.
15

16        Plaintiff United States of America brings this Complaint and alleges as follows in

17 accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules

18 for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules):

19                    <u>**NATURE OF THE ACTION**</u>

20        1.       This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. §

21 924(d) for the forfeiture of any firearm involved in or used in a violation of, or a

22 conspiracy to violate, 18 U.S.C. § 922(a)(1)(A), unlicensed firearms dealing and/or

23 manufacturing.

24        2.       Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j), and

25 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona

26 that give rise to this forfeiture action.  This Court has jurisdiction.  28 U.S.C. §§ 1345 and

27 1355, and 18 U.S.C. § 981(h).

28 / /

**THE DEFENDANTS *IN REM***

3.     The defendant consists of:

1.   Norinco MAK 90 rifle, sn 8463AQ005352;
2.   Anderson Manufacturing AM-15 receiver, sn 16047464;
3.   Anderson Manufacturing AM-15 receiver, sn 16047461;
4.   Anderson Manufacturing AM-15 receiver, sn 16047457;
5.   Anderson Manufacturing AM-15 receiver, sn 16047458;
6.   Smith & Wesson M&P 15 rifle, sn SU08466;
7.   Windham Weaponry Inc. rifle, sn: WW168595;
8.   unknown manufacturer .223 caliber rifle, sn GAA1201;
9.   PWA Commando rifle, sn 21417;
10.  Polytechnologies AKS rifle, sn PF08836;
11.  Noreen Firearms LLC. BN-308 pistol, sn P1005;
12.  unknown manufacturer pistol (Lower Receiver), no sn; and
13.  Noreen Firearms LLC. BN-308 pistol, sn P1009

(defendant property) seized on February 13, 2018.  The defendant property is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

**FACTS**

4.     From approximately November 2015 through November 2017, James Paul Strickland ("James Paul") purchased over 100 firearms and, along with his father, James Carl Strickland ("James Carl"), they are believed to have illegally sold over 50 of these same firearms.

5.     In January 2018, ATF Special Agents ("Agents") were informed that on December 16, 2015, James Paul purchased six Ruger LCP .380 caliber pistols from Area 15 in Mesa, Arizona, and 75 Anderson Manufacturing AM-15 multi-caliber receivers from Estrella Ordnance in Goodyear, Arizona. Records also showed that starting in November 2015 James Paul purchased at least five additional rifles, 14 pistols, and eight Seekins Precision receivers in multiple transactions.

6.     James Paul told the sales person at Area 15, who sold James Paul the six Ruger pistols on December 16, 2015, that he would sell the weapons he was purchasing that day. When the licensed dealer told James Paul he was not allowed to re-sell firearms, James Paul changed his story and said he would not do so.

7.     Three weapons purchased by James Paul were found at three separate crime scenes in Los Angeles, California, in 2015, 2016, and 2017.

2

8.     Though guns are made of many parts, most firearms are comprised of five major components: the stock, barrel, upper receiver, magazine, and lower receiver. A lower receiver by itself is considered a weapon, and regulated and controlled by the ATF.

9.     It is unlawful for any person, except a licensed manufacturer or licensed dealer, to engage in the business of manufacturing or dealing in firearms.

10.    It is common for individuals to buy numerous lower receivers from licensed gun dealers for a modest price, add the necessary components to make the lower receivers into functioning weapons, and sell the weapons illegally for a significant profit.

11.    For instance, in the case of James Paul's purchase of 75 Anderson Manufacturing receivers, each was acquired for $50.  For another $375-427/each, James Paul could buy the necessary parts and make the receivers into complete, functioning AR-15 rifles, which sell for about $600/each, resulting in $123-$175 for each. James Paul made an approximate profit of $9,225 to $13,125 if he sold all 75 of these receivers after making them into AR-15 rifles.

12.    Illegal dealers not only make substantial profits but are not subject to the same government oversight as licensed dealers and consequently are less likely to perform thorough background checks of potential buyers. As a result, weapons purchased from unlicensed dealers more often fall into the hands of criminals than those purchased from licensed dealers.

13.    AR-15s are often built up and sold in large quantities by those trafficking in unlicensed weapons because, among other reasons, they are highly sought by criminal organizations and drug cartels.

14.    Only licensed manufacturers and dealers can manufacture and deal in firearms.   A "dealer" includes any person engaged in the business of selling firearms, wholesale or retail, and any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms.

15.    A person "engaged in business" of manufacturing firearms includes a person who devotes time, attention, and labor to manufacturing firearms as a regular

3

course of trade or business with the principal objective of livelihood and profit through the sale or distribution of firearms manufactured.

16.     A person "engaged in business" of dealing in firearms includes a person who devotes time, attention, and labor to dealing firearms as a regular course of trade or business with the principal objective or livelihood or profit through the repetitive purchase and resale of firearms.

17.     A person who devotes time, attention and labor to selling firearms as a trade or business with the intent of making profits through repeated purchases and sales of firearms is a dealer of firearms and it is not necessary to prove an actual sale of firearms for someone to be found to be a dealer.  *See United States v. King*, 735 F.3d 1098 (9th Cir. 2013).

18.     James Paul and James Carl have been manufacturers of and dealers in firearms, but are not, and never have been, licensed to do so.

19.     James Paul was not an occasional purchaser and seller of firearms, such as a collector or a hobbyist, and was not someone who occasionally repaired, built-up, or manufactured weapons, but instead was an unlicensed firearm manufacturer and dealer.

20.     James Paul has lived with his father, James Carl, and mother, Sherri Strickland, at 38838 N. 7th Ave., Phoenix, Arizona.

***Interview of James Paul***

21.     On January 24, 2018, Agents contacted James Paul at his employer.  James Paul agreed to speak with them outside of the business.

22.     Agents asked James Paul why he listed his address as a mail box store on his ATF Form 4473 instead of a residential address, as required by law. Misrepresenting a residential address, or listing a non-residential address, on an ATF Form 4473 is a felony offense.

23.     James Paul admitted he had intentionally put a mail box store as his address because he was worried about his mail being stolen from his residential mail box. James Paul said his residential address was 38838 N. 7th Ave., Phoenix, Arizona.

24. It is common for those illegally selling firearms to make misrepresentations on ATF Form 4473s to avoid detection by law enforcement.

25. James Paul was informed that a Ruger LCP he purchased had been recovered at a crime scene. James Paul said he had purchased six such Rugers and that he had sold four of them. He said he sold the four Rugers to someone at a gun show and that he had records of the sale.

26. Agents asked James Paul if they could come to his house and see all the guns he had. James Paul said they could not come to his house but that he would be willing to meet them somewhere else. He also told them that he would only show them the two Rugers, but not the rest of his weapons.

27. When asked how many weapons James Paul had, he said it was not any of the Agents' business. Agents told James Paul the reasoning behind their question, and James Paul said he had a total of five weapons.

28. Agents told James Paul they thought he was being deceptive as they knew he had at least 75 weapons based upon his purchase of 75 lower receivers. James Paul said he had misunderstood their question and that he thought that lower receivers were considered an "Any Other Weapon," also known as an "AOW."

29. Agents explained to James Paul that AOWs are required to be registered with the ATF National Firearms Act ("NFA") branch.

30. James Paul then claimed that he had purchased approximately 100 firearms, sold 25 of them, and had about 75 left.

31. James Paul said that he had paperwork, to include a picture of the identification of each purchaser, for every weapon that he had sold.

32. James Paul said he was uncomfortable with the Agents coming to his residence and looking at his firearms because it was his parents' house and he did not think they would give the Agents permission to do so.

33. When Agents asked James Paul why he had purchased so many of the same make and model of lower receivers, he said he had done so because he had anticipated that

Hillary Clinton would be elected president and that she would be pushing the gun control agenda, implying that such guns would become much more scarce and valuable.

34.     James Paul said his father, James Carl, was an ATF defendant in the 1980s involving stolen items. James Paul said his father did not trust the ATF due to the way it treated him during that case. James Paul said that was why he was hesitant to take the Agents to his house to show his firearms.

35.     However, James Paul eventually agreed to meet with the Agents at a later date outside of his house. James Paul gave the Agents a list of his guns and ended up calculating that he actually had 50 weapons remaining unsold, instead of 75.

36.     James Paul said he sold firearms to make a down payment on his truck and to pay bills.

37.     James Paul said he never sold any firearms on Craigslist or Backpage but instead sold them at gun shows or through friends.

38.     On January 25, 2018, Agents received screen shots from James Paul via text message of four bills of sale dated April 22, 2017, in which James Paul sold the four Rugers to Thoumsin C. Pierre.

39.     Based upon James Paul's admissions during his interview, Agents estimated he had sold approximately 57 firearms over the previous two years for an estimated profit of $7,000 to $10,000.

***Search Warrant Executed at 38838 N. 7th Ave., Phoenix, Arizona***

40.     On February 13, 2018, Agents executed a search warrant at 38838 N. 7th Ave., Phoenix, Arizona.

41.     Sixty-six firearms were found and seized, most of which were AR-15 style receivers, significantly more than the five firearms James Paul originally said he possessed.  Those who are engaged in illegal purchasing, selling, and manufacturing of firearms often minimize their involvement with firearms.

42.     At least four empty Anderson receiver boxes, as well as trigger packs and receivers (Exhibit 1), a Jig instructions/manual for completing 80-percent receivers (AR-

style) and manuals for converting AK style rifles (Exhibit 2), and the Stricklands' own gun sales business cards (Exhibit 3) were found in the house.

43.     All of these items found indicated that the James Paul and James Carl were manufacturing and selling firearms without a federal firearms license.

44.     Also found at the residence was James Carl's pickup truck. Inside it Agents found several firearms (Exhibit 4) as well as blank bills of sales, a Gibbz Arms Dealer Pricing spreadsheet, more business cards, and a "Private Sale" sign (Exhibit 5).  These items found in James Carl's pickup further evidence that he and James Paul were manufacturing and dealing in firearms.

45.     It should be noted that of the defendant property, Items 2-5 (Anderson Manufacturing lowers) were found in James Carl's room, while the remaining weapons (Items 1 and 6-13) were found in James Carl's truck.

46.     Though the same brand and model as the 75 AR-style receivers purchased by James Paul on December 16, 2015, from Estrella Ordnance in Goodyear, Arizona, these four receivers (Items 2-5) found in James Carl's room had different serial numbers than those purchased by James Paul.

***Interview of James Carl***

47.     On February 13, 2018, James Carl agreed to be interviewed by the Agents.

48.     James Carl said he was a previous Federal Firearms Licensee when he was a firearms manufacturer in the 1980s, though the ATF did not think this was true as they found no such record.

49.     When asked if he were knowledgeable about firearms, James Carl admitted that he was an "Upgrader" who could upgrade firearms, triggers, safeties, build-ups of firearms, etc. He admitted that he knew how to build an AR-15 from the ground up.

50.     James Carl said he and his son manufactured and built guns which were later sold. He said James Paul "does his side of the business" and "I do my side of the business" and "together we meet in the middle."

/ /

51.    James Carl and James Paul have been working together to manufacture and deal in firearms.

52.    James Carl said they were not in it to make money but were doing it to upgrade their collection of firearms.

53.    When reminded that they were not just working on their firearms, but upgrading or working on other peoples' guns as well, James Carl clarified that this might be true if someone called "upgrading" doing a trigger pack.

54.    James Carl said he had been in the business of upgrading firearms for about two years and that James Paul had been living with him "for years."

55.    When asked about how much he made upgrading firearms, he at first said it depends, then said it was very little, and finally said, "I can't answer that question."

56.    A later records search by the Arizona Department of Economic Security revealed that James Carl did not have any reported income from June 2015 to June 2018.

57.    When asked if he did complete builds for people, James Carl said that if you brought him the lower receiver and told him what you wanted, he could do the rest.

58.    James Carl reiterated that they did triggers, trigger packs, sights, complete builds, etc.

59.    James Carl said that he and James Paul routinely built and manufactured AR style firearms from the ground up and went to gun shows several times per year to try and sell them.

60.    James Carl said he and his son found buyers at gun shows by carrying around a bag that said "private sales." James Carl would also hand out business cards in attempts to find new customers to build and sell firearms to.

61.    James Carl was asked if anyone had ever told him that he needed a license when he manufactured or sold guns. He said that when he and James Paul were at gun shows they talked to ATF personnel and explained what they were doing, and ATF officials assured them it was legal. Agents know from their training and experience that

ATF personnel would never advise the Stricklands, or anyone else, to repetitively buy, manufacture, or sell firearms without a license.

62.     When asked specifically what he was doing with the Anderson Manufactured receivers, James Carl said, "Do you know who was going to get elected?" referencing Hillary Clinton's run for the presidency.

63.     Agents asked James Carl why he didn't just become a licensed firearms dealer, since it was relatively simple, to which he replied, "I don't know."

64.     James Carl was told to cease and desist from building and selling firearms from that date forward.

65.     James Carl said that he did not know that he was breaking the law, but now that they explained that what he was doing was illegal, he would comply with their request.

66.     James Carl said that he was preparing to go to an upcoming gun show in Wickenburg, Arizona. Agents later confirmed the gun show occurred on the weekend of February 17th, a few days after the interview, corroborating James Carl's statement that he was going to a gun show.

67.     James Carl said that he intended to sell the guns found in his truck (Items 1 and 6-13) at the Wickenburg gun show.

68.     James Carl also said that he and his son James Paul owned all the weapons recovered by the Agents and that they intended to build up the receivers and sell them as AR-15s for a profit.

***Administrative Forfeiture and Claim by James Carl***

69.     On March 9, 2018, ATF sent notice to James Carl, James Paul, and Sherri Strickland notifying them that 66 items had been seized for administrative forfeiture.

70.     On April 13, 2018, James Carl made an administrative claim to the defendant property.

71.     On June 19, 2018, ATF referred the case to United States Attorney's Office for judicial forfeiture.

72.     On July 12, 2018, ATF administratively forfeited the 53 weapons James Carl had not made an administrative claim to (primarily Anderson Manufacturing receivers, along with other receiver types and fully-functional firearms).

73.     In his administrative claim James Carl stated the following (in *italics*) about the 13 seized weapons:

1.      Norinco MAK 90 rifle, sn 8463AQ005352;
        *Collectable firearm dating back to the pre ban era. The firearm took a long time to acquire in the trust collection. It was acquired thru trading of hot rod part/car and cash purchase.*

2.      Anderson Manufacturing AM-15 receiver, sn 16047464;
        *Stripped lower receiver purchased from Estrella Ordnance to be built as Vietnam era clone.*

3.      Anderson Manufacturing AM-15 receiver, sn 16047461;
        *Stripped lower receiver purchased from Estrella Ordnance to be built as Vietnam era clone.*

4.      Anderson Manufacturing AM-15 receiver, sn 16047457;
        *Stripped lower receiver purchased from Estrella Ordnance to be built as Vietnam era clone.*

5.      Anderson Manufacturing AM-15 receiver, sn 16047458;
        *Stripped lower receivers purchased from Estrella Ordnance to be built as Vietnam era clone.*

6.      Smith & Wesson M&P 15 rifle, sn SU08466;
        *Early Smith & Wesson M&P 15 was traded at a gun show for a Glock 22 – 40.*

7.      Windham Weaponry Inc. rifle, sn: WW168595;
        *Was purchased from a Phoenix Police officer who was selling it to arrange funds for his upcoming wedding.*

8.      unknown manufacturer .223 caliber rifle, sn GAA1201;
        *Gibbz Arms is a special side charged upper & lower receiver purchased from Gibbz Arms and built as a long range specialty firearm.*

9.      PWA Commando rifle, sn 21417;
        *Collectable firearm dating back to the pre ban era. The firearm took a long time to acquire in the trust collection. It was acquired thru trading of hot rod part/car and cash purchase.*

10.    Polytechnologies AKS rifle, sn PF08836;
*Collectable firearm dating back to the pre ban era. The firearm took a long time to acquire in the trust collection. It was acquired thru trading of hot rod part/car and cash purchase.*

11.    Noreen Firearms LLC. BN-308 pistol, sn P1005;
*Stripped lower receiver is going to be built as long range 1,000 yard tournament firearm.*

12.    unknown manufacturer pistol (Lower Receiver), no sn;
*This 80% lower receiver and trigger pack lower were being built as a AR pistol. The machine work was done by my own hands as to just see if I could do it. This is the reason for no markings or serial number because it was not complete.*

13.    Noreen Firearms LLC. BN-308 pistol, sn P1009
*Stripped lower receivers are going to be built as long range 1,000 yard tournament firearm.*

74.    According to James Carl's own statements in his Administrative Claim, Items 2-5, 11-13 were all receivers that he was in the process of converting into fully-operational firearms.

75.    These seven lower receivers are the same or similar to those that had been upgraded into working firearms and illegally sold by the Stricklands.

76.    Regarding Items 1 and 6-10, though already completed firearms, they were in James Carl's pickup when seized, and by James Carl's own admission, were being taken by him to a gun show in Wickenburg, Arizona, to be sold.

***Defendant Property part of Stricklands' Firearms Business***

77.    The defendant property are firearms involved in or used in a violation of, or a conspiracy to violate, 18 U.S.C. § 922(a)(1)(A), unlicensed firearms dealing and/or manufacturing, for the following reasons, among others:

a.    Neither James Paul nor James Carl has a license to sell or manufacture weapons;

b.    James Paul purchased over 100 firearms during a two year period;

c.    James Paul intentionally lied on his ATF Form 4473s on all of these 100-plus purchases, presumably to avoid detection by law enforcement;

d.  James Paul admitted to building approximately 50 lower receivers into AR-15s to be sold;

e.  AR-15s are the most commonly converted weapon sold by illegal gun dealers;

f.  AR-15s are widely sought by criminal organizations and drug cartels;

g.  Three of the weapons sold by James Paul were later found at crimes scenes in Los Angeles, California in 2015, 2016, and 2017;

h.  James Carl and James Paul made between an estimated $7,000 and $10,000 by selling 57 lower receivers converted into AR-15s;

i.  James Paul admitted to making payments on his truck and other bills with the sales from his guns;

j.  James Carl and James Paul freely admitted in interviews to buying, building, and selling dozens of firearms;

k.  James Carl had no reported income in the state of Arizona from June 2015 to June 2018;

l.  James Carl admitted that he went to gun shows with his son frequently and that they would solicit business by giving out business cards and carrying a sign advertising their services;

m.  At the Stricklands' residence were trigger packs and receivers, a Jig instructions/manual for completing 80-percent receivers (AR-style), manuals for converting AK style rifles, business cards, a sign, a Gibbz Arms Dealer Pricing guide, and 66 firearms and receivers;

n.  James Carl admitted that the receivers seized were a part of his and his son's gun dealing business, and that they would eventually sell each of them once they were built up and made into completed weapons; and

o.  James Carl admitted that the weapons found in his truck (which makes up Items 1 and 6-13 of the Defendant Property) were to be sold soon at a gun show in Wickenburg, Arizona.

**FIRST CLAIM FOR RELIEF**

Based on the aforementioned facts and circumstances, the defendant property was firearms involved in or used in a violation of, or a conspiracy to violate, 18 U.S.C. § 922(a)(1)(A), unlicensed firearms dealing and/or manufacturing, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

**NOTICE TO ANY POTENTIAL CLAIMANT**

If you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Supplemental Rule G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Supplemental Rule G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 also must be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to

property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 5th day of April, 2019.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*S/Mark J. Wenker*
MARK J. WENKER
Assistant United States Attorney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 2







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 3





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 5





1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

2

**<u>VERIFICATION</u>**

3       I, Patrick S. Sander, verify and declare under penalty of perjury that, I am a Special

4   Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, that I have read the

5   foregoing Complaint for Forfeiture *In Rem* and know the contents, and that the matters

6   contained in the Complaint are true to my own knowledge, except that those matters

7   alleged upon information and belief and as to those matters, I believe them to be true.

8       The sources of my knowledge and information and the grounds of my belief are the

9   official files and records of the United States, information supplied to me by other law

10  enforcement officers, as well as my investigation of this case.

11      I verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of April, 2019.

12

13

14

Patrick S. Sander

15  Bureau of Alcohol, Tobacco, Firearms, and
    Explosives

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

# <u>Civil Cover Sheet</u>

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

---

**Plaintiff (s):** **United States of America**

**Defendant (s):** **13 Firearms and Receivers**

County of Residence: Maricopa

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

**Mark J. Wenker , AUSA**
**40 N. Central Ave. Ste. 1800**
**Phoenix, Arizona  85004**
**602 514-7500**

Defendant's Atty(s):

---

<u>II. Basis of Jurisdiction</u>:  **1. U.S. Government Plaintiff**

<u>III. Citizenship of Principal Parties</u> **(Diversity Cases Only)**

Plaintiff:- **N/A**

Defendant:- **N/A**

<u>IV. Origin</u> :  **1. Original Proceeding**

<u>V. Nature of Suit</u>:  **690 Other**

<u>VI.Cause of Action</u>:  **Forfeiture In Rem**

<u>VII. Requested in Complaint</u>

Class Action: **No**

Dollar Demand:

Jury Demand: **No**

<u>VIII. This case</u> **is not related** to another case.

**Signature:**   <u>**s/ Mark J. Wenker**</u>

   **Date:**   <u>**04/05/2019**</u>

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

Revised: 01/2014